Administrator of CHARITY AUBLE *vs.* JACOB D. TRIMMER
and others.

*The withholding a part of a loan in violation of the agreement of the parties, does not constitute usury. The mortgage stands as a valid security for the amount actually advanced, and no more.*

*Mr. B. Vansyckel,* for complainant.

The answer of Jacob D. Trimmer sets up, that the mortgage of the complainant is usurious, but that charge is abandoned by the defendant's counsel; there is nothing in the case to support it.

The only question between us is, whether there must be an abatement of $200 from the face of the mortgage.

The mortgage upon which the bill is filed, was given by Jacob D. Trimmer, the defendant, to Charity Auble, April 16th, 1860, for $1000, payable the first Monday in April, 1861, with interest from date, acknowledged the same day, and recorded April 27th, 1860.

The answer of Jacob D. Trimmer sets up, that he was indebted to Charity Auble in the sum of $800, upon two promissory notes, and that on or about April 16th, 1860, one William Farley, who was the attorney in fact of said Charity, came to him with a bond and mortgage for $1000, requesting him to execute it to Charity. That he told Farley, that he owed Charity only $800; to which Farley replied that she wished to loan him $200 more, which she expected to receive in a short time from one Daniel Potter, and that he should execute the mortgage for $1000, and that he, Farley, would give him (Trimmer), his own note for $200, until the money was collected from Potter. That Trimmer thereupon executed the mortgage for $1000, and Farley gave him his note for $200.

Trimmer alleges that the $200 has never been paid to him, and that he still holds Farley's note.

The case rests almost entirely upon the testimony of William Farley.

Farley says, that in having the mortgage executed, he was not acting as the attorney of Mrs. Auble, but that he was acting both for Mrs. Auble and Mr. Trimmer.

Farley testifies that Mrs. Auble held a mortgage against one Daniel Potter for $1144, which, with the interest due thereon, amounted in April, 1860, to $1700. That, by the direction of Mrs. Auble, Potter paid over to Jacob D. Trimmer $800 (part of the consideration of complainant's mortgage); that Potter gave to Mrs. Auble a new mortgage for $700; and the remaining $200 due on the Potter mortgage, Potter was to pay to Jacob D. Trimmer.

Farley further says, that when Trimmer executed the $1000 mortgage to Mrs. Auble, he (Farley), gave Trimmer his note for $200 as a memorandum, but that Trimmer agreed to look to Potter for the $200, and surrender to him his note when he received the $200.

He further says, that upon the agreement of Trimmer to look to Potter for the $200, Mrs. Auble, soon after Trimmer executed the $1000 mortgage to her, surrendered the mortgage to Potter which she held against him, and it was cancelled.

This state of facts is sworn to by William Farley, and there is no evidence to impeach his statement.

If it is true that Mrs. Auble surrendered her mortgage to Potter, upon the agreement of Trimmer to look to Potter for the $200, she is entitled to recover the full amount of her mortgage against Trimmer.

It does not appear that Mrs. Auble knew that Farley gave Trimmer his note for $200, or that she authorized, in any way, such note to be given; she merely surrendered her mortgage against Potter, on which there was a balance of $200 due, upon the agreement of Trimmer to look to Potter for that amount.

Trimmer did not ask to have the Potter mortgage assigned or passed over to him, so that he could hold it against Potter.

Administrator of Auble *v.* Trimmer et al.

It was admitted by Potter, that he owed a balance of $200, and Trimmer agreed to look to Potter for that amount; whether he ever received that amount from Potter, does not appear.

*Mr. Dilts*, for defendants.

The only question between the parties in this case is, as stated by complainant's counsel, "whether there must be an abatement of $200 from the face of the mortgage."

The answer, it is true, sets up usury, but I think there is not evidence to support it.

As to the other point, Jacob D. Trimmer, the defendant, received, it is admitted, *but* $800 at the time the bond and mortgage were executed. It appears, by the testimony of Mr. Farley, that the bond first drawn was upon its face for $800, and that at a subsequent time the bond for $1000 was prepared, as Trimmer desired that amount of money.

It further appears, by Farley's testimony, that he was then acting as attorney for Mrs. Auble, and that he had not the money in hand at the time, to deliver the additional $200 to Trimmer. It is not shown by Farley, or any one else, that Trimmer ever after received the $200. In fact, the *contrary appears.* Trimmer so declares in his answer, and no testimony has been produced to disprove that declaration.

Moreover, Farley says he gave his note to Trimmer at the time the bond was executed, as a memorandum that $200 was still due to Trimmer on the mortgage. Farley was not bound to pay that note. He had no concern in the matter, except as agent for Mrs. Auble. If a note at all, it was Mrs. Auble's note, and *represented, according to Farley's own testimony, a part of the consideration of the plaintiff's bond and mortgage.* It has never been paid, but is produced by defendant, recognized and proved by Farley, and made an exhibit in the case. Had the money been paid, of course it would have been taken up; but of this there is no pretence.

With what propriety can the complainant refuse to accept this note as a part payment of the bond, when it was, in fact,

a part of the consideration which passed from her whom he represents, at the time the bond and mortgage were executed ? If good in the one case, it is confidently contended it is good in the other. The note considered as Farley's, and not Mrs. Auble's note, was without consideration, and *nudum pactum*.

But it is pretended that Trimmer was to look to one Daniel Potter, against whom Mrs. Auble held a mortgage for the $200. That said mortgage was originally for about $1100, and had been reduced by payments, so that about the $200, in the *opinion* of Farley, remained due, and that Trimmer agreed to look to him (Potter), for that balance.

If this was the agreement, why was not the bond and mortgage against Potter given over to Trimmer, instead of Farley's note? If he was to get the money from Potter, it was Mrs. Auble's duty to put in his hands some instrument, showing a rightful claim for the money. How else was he to get it from Potter? A foreclosure, or suit at law, might be necessary. Upon what could Trimmer found such action? He had nothing, and of course could not collect the money of Potter.

But it is said, that upon Trimmer's engagement to look to Potter for the $200, Mrs. Auble surrendered the bond and mortgage to Potter. What right had she to do so, when those were the only papers upon which Mr. Trimmer could found his claim against Potter for the $200? What had Trimmer to do with Potter? Their interests do not appear to have been identical. It is not, I think, pretended that Mr. Trimmer ever received more than the $800 mentioned ; but whatever may be pretended, I think it clearly appears he did not.

The note is good for nothing against Farley, and if Trimmer cannot avail himself of it here, he cannot anywhere.

Justice and equity require that he should not be compelled to pay that which he never received.

THE CHANCELLOR. The bill is filed to foreclose a mortgage given by Jacob D. Trimmer to Charity Auble for

X *

$1000, bearing date on the 16th of April, 1860. The defendant claims a credit of $200 on the amount of the mortgage debt, which is disputed by the complainant.

The bond and mortgage were taken through the agency of William Farley, who acted in this behalf as the agent of the mortgagee. It is clearly shown that at the date of the mortgage, there was only $800 due from the mortgagor to the mortgagee. The balance of the loan was advanced in the shape of a note given by Farley to the mortgagor for $200, bearing even date with the mortgage, and payable one day after date with interest. It is not pretended that this note was accepted by the mortgagor as so much cash, or that he was to look to Farley for its payment. It is admitted that it was a mere memorandum of the amount which remained due from the mortgagee, on account of the loan for which the mortgage was given. The mortgagor, as the consideration of his mortgage, received $800, the amount of his existing indebtedness, and a memorandum that $200 remained to be advanced by the mortgagee. That money has never been advanced by the mortgagee, nor received by the mortgagor. The memorandum of indebtedness is still in the hands of the mortgagor uncancelled.

The withholding a part of the loan, in violation of the agreement of the parties, does not constitute usury. The mortgage stands as a valid security for the amount actually advanced, and no more. *Executors of Howell* v. *Auten*, 1 *Green's Ch. R.* 44.

An attempt is made, on the part of the complainant, to show that the mortgagor agreed to look to one Daniel Potter, for the payment of the $200 due from Mrs. Auble. The case attempted to be established by the complainant's evidence is, that Potter was indebted (upon bond and mortgage) to Mrs. Auble, the mortgagee, and that Trimmer, the mortgagor, agreed to look for the payment of the $200 which remained to be advanced to him, not to Mrs. Auble, but to Potter, her debtor. The whole case rests upon the uncorroborated testimony of Farley alone. The transaction, as

detailed by him, is highly improbable, if not absolutely incredible. Mrs. Auble, he alleges, had a bond and mortgage against Potter for his debt, which he, on her behalf, cancelled, and surrendered the bond and mortgage, on a parol agreement of Trimmer to look to Potter for the $200 due from Mrs. Auble. But Trimmer had no claim against Potter, and no means of compelling him to pay the debt due from Mrs. Auble. The existence of the indebtedness from Potter to Mrs. Auble, is disputed. His administrators deny the existence of any such indebtedness, and the fact that his bond and mortgage were surrendered by Mrs. Auble, and is now in the hands of his administrators, is strong corroboration of the truth of their allegation.

It is in the last degree improbable, that a bond and mortgage for a subsisting debt, would have been surrendered upon a parol promise by a third party to assume such indebtedness. But the conclusive evidence upon this part of the case is, that the note of the witness for the $200 due to the mortgagor, is still in his hands uncancelled. This evidence cannot be overcome by the uncorroborated testimony of the maker of the note, even if it were much more probable and credible than it now appears.

The mortgage must stand as a security for $800 only, with interest, and the decree will be made accordingly.